Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Ryan L. McBride, Esq. (SBN: 297557)
ryan@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anthony Barbano, Gamalih Mendoza, Mary Means, Annmarie Ball, and Jose Rivera, Individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>JPMorgan Chase Bank, N.A.,<br><br>          Defendant. | Case No. 5:19-cv-01218-JGB-SP<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS; PRELIMINARY APPROVAL OF CLASS SETTLEMENT; AND ORDER DIRECTING NOTICE**<br><br>Date: April 19, 2021<br>Time: 9:00am<br>Ctrm: 1<br><br>Hon. Jesus G. Bernal |

# TABLE OF CONTENTS

**Page No.**

I.   Introduction .................................................................................................1

II.  Background ..................................................................................................2

III. Statement of the Case ...............................................................................3

   A.   Plaintiffs' FAC Alleges that Chase Violated RESPA ...........................3

   B.   Chase Denies the Allegations in the FAC and Any Liability to Plaintiffs or the Purported Class ......................................................................4

   C.   Proceedings to Date ...........................................................................5

   D.   The Settlement ...................................................................................6

      1.   The Settlement Class ....................................................................6

      2.   Proposed Settlement Payments ....................................................6

      3.   Class Notice ..................................................................................6

      4.   Administration of the Settlement ..................................................7

      5.   Scope of Release ...........................................................................8

      6.   Termination of Settlement ............................................................9

      7.   Class Representative's Application for Service Award .................9

      8.   Class Counsel's Application for Attorneys' Fees and Costs ...........9

      9.   Second Distribution and Remaining Funds.................................10

      10.  Legal Analysis ............................................................................10

      11.  The Proposed Class Satisfies The Requirements Of Rule 23 ..........11

         i.   The members of the Settlement Class are sufficiently numerous12

         ii.  The requirement of commonality is satisfied. ...........................13

         iii. The requirement of typicality is satisfied. ................................14

         iv.  The requirement of adequate representation is satisfied. ..........15

         v.   The Action meets the requirements of Rule 23(b)(3)................15

      12.  The Parties Face Substantial Risks In Pursuing Further Litigation ..17

      13.  The Court Should Preliminarily Approve the Proposed Settlement .17

    i.    The settlement is a product of arms' length negotiations..........19

    ii.   The settlement is fundamentally fair, reasonable and adequate 20

14.  The Proposed Plan of Notice Satisfies the Requirements of Rule 23

     and Due Process. .................................................................................23

15.  Proposed Preliminary Schedule .......................................................24

IV.  Conclusion .................................................................................................25

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                        <u>Page No.</u>

*Abels v. JBC Legal Group, P.C.*,

   227 F.R.D. 541 (N.D. Cal. 2005) .......................................................15

*Acosta v. Trans Union LLC*,

   234 F.R.D. 377 (C.D. Cal. 2007) ......................................................18

*Amchem Prods. Inc. v. Windor*,

   521 U.S. 591 (1997) ...........................................................11, 16

*Bert v. AK Steel Corp.*,

   2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ..................................19

*Blackie v. Barrack*,

   524 F.2d 891 (9th Cir. 1975) ...........................................................13

*Bullock v. Administrator of Estate of Kircher*,

   84 F.R.D. 1 (D.N.J. 1979) ...............................................................19

*Carrizosa v. Stassinos*,

   669 F. Supp. 2d 1081 (N.D. Cal. 2008) ...........................................15

*Celano v. Marriott Int'l, Inc.*,

   242 F.R.D. 544 (N.D. Cal. 2007) ....................................................12

*Churchill Village, L.L.C. v. General Electric*,

   361 F.3d 566 (9th Cir. 2004)...........................................................24

*Consolidated Rail Corp. v. Town of Hyde Park*,

   47 F.3d 473 (2d Cir. 1995) .............................................................12

*De La Fuente v. Stokely-Van Camp, Inc.*,

   713 F.3d 225 (7th Cir. 1983)...........................................................14

*Dennis v. Kellogg Company*,

   No. 11-55674 & No. 11-55706,

   2012 U.S. App. LEXIS 18576 (9th Cir. Sept. 4, 2012) ................10, 19

*Dukes v. Wal-Mart, Inc.*,
     474 F.3d 1214 (9th Cir. 2007)......................................................13, 15
*Eisen v. Carlisle & Jacquelin*,
     417 U.S. 156 (1974) .................................................................6
*General Tel. Co. v. Falcon*,
     457 U.S. 147 (1982) ...........................................................13, 15
*Hammon v. Barry*,
     752 F. Supp. 1087 (D.D.C. 1990) ...................................................20
*Hanlon v. Chrysler Corp.*,
     150 F.3d 1011 (9th Cir. 1998) ................................................13, 19
*Hanon v. Dataproducts Corp.*,
     976 F.2d 497 (9th Cir. 1992)........................................................14
*Harris v. Palm Springs Alpine Estates, Inc.*,
     329 F.2d 909 (9th Cir. 1964).........................................................12
*Hunt v. Check Recovery Systems, Inc.*,
     241 F.R.D. 505 (N.D. Cal. 2007) ..................................................15
*In re Armored Car Antitrust Litigation*,
     472 F. Supp. 1357 (N.D. Ga. 1979) ...............................................20
*In re Chicken Antitrust Litigation*,
     560 F. Supp. 957 (N.D. Ga. 1980) ................................................20
*In re Heartland*,
     851 F. Supp. 2d 1040 (S.D. Tex. 2012) .......................................7, 16
*In re Inter-Op Hip Prosthesis Liab. Litig.*,
     204 F.R.D. 359 (N.D. Cal. 2001) ..............................................19, 20
*In re Katrina Canal Breaches Litig.*,
     628 F.3d 186 (5th Cir. 2010).........................................................7
*In re NASDAQ Market Makers Antitrust Litigation*,
     176 F.R.D. 99 (S.D.N.Y. 1997) ................................................10, 18

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,

 163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................17

*In re Syncor*,

 516 F.3d 1095 (9th Cir. 2008)............................................................................18

*In re Traffic Executive Association-Eastern Railroad*,

 627 F.2d 631 (2d Cir. 1980) ...............................................................................18

*In re United Energy Corp. Solar Power Modules Tax Shelter Ivs. Sec. Litig.*,

 122 F.R.D. 251 (C.D. Cal. 1988) ........................................................................14

*Kapsis v. Am. Home Mortg. Servicing Inc.*,

 923 F.Supp.2d 430 (E.D.N.Y.2013).....................................................................21

*Larson v. Sprint Nextel Corp.*,

 2010 WL 239934 (D.N.J. Jan. 15, 2010) ............................................................19

*Lerwill v. Inflight Motion Pictures, Inc.*,

 582 F.2d 507 (9th Cir. 1978)...............................................................................15

*Lewis v. Newman*,

 59 F.R.D. 525 (S.D.N.Y. 1973) ...........................................................................11

*Lightbourn v. County of El Paso, Tex.*,

 118 F.3d 421 (5th Cir. 1998)...............................................................................14

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*,

 834 F.2d 667 (7th Cir. 1987)...............................................................................20

*Mazed v. JP Morgan Chase Bank*, N.A.,

 No. SA-CV-11-814-JLS-ANX, 2014 WL 1364929

 (C.D. Cal. Apr. 7, 2014)......................................................................................21

*Mendoza v. United States*,

 623 F.3d 1338 (9th Cir. 1980).............................................................................23

*Milliron v. T-Mobile USA, Inc.*,

 2009 WL 3345762 (D.N.J. Sept. 14, 2009) ........................................................19

*Milstein v. Huck*,

   600 F. Supp. 245 (E.D.N.Y. 1984) ..................................................................... 19

*Mullane v. Central Hanover Bank & Trust Co.*,

   339 U.S. 306 (1950) ..................................................................................... 23, 24

*Nelson v. Bennett*,

   662 F. Supp. 1325 (E.D. Cal. 1987) .................................................................. 11

*Officers for Justice v. Civil Serv. Comm'n*,

   688 F.2d 615 (9th Cir. 1982) ....................................................................... 16, 18

*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*,

   323 F. Supp. 364 (E.D. Pa. 1970) .................................................................... 24

*Ploog v. HomeSide Lending, Inc.*,

   209 F.Supp.2d 863 (N.D.Ill.2002) .................................................................. 21

*Priddy v. Edelman*,

   883 F.2d 438 (6th Cir. 1989) ........................................................................... 20

*Reed v. Wash. Mut. Inc.*

   Civil Action No. 07-4426, 2012 U.S. Dist. Lexis 171606

   (E.D. Penn. Dec. 12, 2012) ............................................................................. 22

*Renfroe v. Nationstar Mortg., LLC*,

   822 F.3d 1241 (11th Cir. 2016) ....................................................................... 21

*Rosario v. Livaditis*,

   963 F.2d 1013 (7th Cir. 1992) ......................................................................... 15

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,

   2010 WL 2486346 (C.D. Cal. June 15, 2010) ................................................. 19

*Satchell v. Federal Express Corp.*,

   2007 WL 1114010 (N.D. Cal. 2007) ............................................................... 18

*Schwartz v. Harp*,

   108 F.R.D. 279 (C.D. Cal. 1985) .................................................................... 14

PLAINTIFF'S MOTION FOR CERTIFICATION OF SETTLEMENT CLASS; PRELIMINARY APPROVAL OF CLASS SETTLEMENT

*Smith v. Specialized Loan Specializing, LLC*,

   No. 16-cv-2519-GPC-BLM, 2017 WL 1711283

   (S.D. Cal. May 3, 2017) .................................................................21

*Sommers v. Abraham, Lincoln Federal Savings & Loan Association*,

   79 F.R.D. 571 (E.D. Pa. 1978) ......................................................20

*Steinberg v. Carey*,

   470 F. Supp. 471 (S.D.N.Y. 1979) ...............................................20

*Stoddart v. Express Servs.*,

   2020 U.S. Dist. LEXIS 186315 (E.D. Cal. 2020) .........................20

*Utility Reform Project v. Bonneville Power Admin.*

   869 F.2d 437 (9th Cir. 1989) .........................................................16

*Vaught v. Bank of America, N.A.*

   901 F.Supp. 2d 1071 (C.D.Ill. 2012) ...........................................22

*Wyatt v. Creditcare, Inc.*,

   2005 WL 2780684 (N.D. Cal. 2005) .............................................15

**Statutes**

12 C.F.R §§ 1024.35(a) ....................................................................2, 3

California Civil Code § 1542 ...............................................................8

Real Estate Settlement Procedures Act, ("RESPA")

   12 U.S.C § 2601, *et seq.*.........................................................*passim*

**Other Authorities**

2 *McLaughlin on Class Actions* § 6:7 (8th ed) ..................................19

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*

   § 8.32 at 262-68 (4th ed. 2002) ....................................................23

Manual for Complex Litigation (4th ed. 2004) § 21.632 ..............10, 11

Manual for Complex Litigation § 30.45 (3rd ed. 1995) .....................18

*Manual for Complex Litigation*, 3d (1997) § 30.41 ..........................18

KAZEROUNI
LAW GROUP, APC

PLAINTIFF'S MOTION FOR CERTIFICATION OF SETTLEMENT CLASS; PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Newberg & Conte, *Newberg on Class Actions* (Fourth Ed. 2002)

   § 11.25 pp.38-39 ............................................................................18, 20

**Rules**

Fed. R. Civ. P. 23 ...........................................................................*passim*

# I.    INTRODUCTION

In this putative class action, Plaintiffs Anthony Barbano, Gamilah Mendoza, Mary Means, Annmarie Ball, and Jose Rivera (collectively referred to as "Plaintiffs") on behalf of themselves and others similarly situated, asserted that Defendant JPMorgan Chase, N.A. (referred to as "Chase" or "Defendant") violated the Real Estate Settlement Procedures Act, 12 U.S.C § 2601, *et seq*. ("RESPA"), by failing to provide information and/or records in response to lawful requests by Plaintiffs' Counsel and putative class members without having a permissible purpose for denying the requests for information and/or records. Defendant denies all of the substantive and class action allegations in Plaintiffs' First Amended Complaint ("FAC"), which is the operative complaint. However, the parties have reached a settlement.

As explained below, the parties believe that they are fully apprised of the relative strengths and weaknesses of each other's claims and defenses and the potential risk to each party in pursuing further litigation. Pursuant to the terms of the Settlement Agreement and Release ("Settlement Agreement") submitted with this Motion for Certification of Settlement Class; Preliminary Approval of Class Settlement; and Order Directing Notice (the "Motion"), Plaintiffs ask this Court to:

1.  Certify the Settlement Class for settlement purposes only;

2.  Appoint Abbas Kazerounian, David J. McGlothlin, and Ryan L. McBride of the Kazerouni Law Group, APC as Class Counsel;

3.  Appoint Plaintiffs as the Class Representatives;

4.  Approve the proposed Notice Plan as well as the forms of Notice to be provided to the Settlement Class;

5.  Approve the proposed preliminary schedule for providing notice to the class and for class members to submit requests for exclusion or objections to the proposed settlement;

6.  Pending determination of whether this Settlement should be finally

1    approved, stay all proceedings in this action except those related to

2    effectuating the Settlement; and

3        7.  Schedule a hearing to consider Final Approval of the Settlement.

4        In the event that the settlement is not approved, the parties agree that any

5    agreement and order certifying a settlement class shall be null and void and the

6    parties shall return to their respective positions at the time this Motion was

7    submitted to the Court for approval. The [proposed] Order Preliminarily Approving

8    of Class Action Settlement is attached as Exhibit C to the Settlement Agreement.

9    **II.   BACKGROUND**

10       RESPA is enforced primarily by the Consumer Financial Protection Bureau

11   ("CFPB"). The CFPB is granted authority to issue administrative rules and

12   regulations under RESPA's implementing regulation, 12 U.S.C. § 2617. The CFPB

13   periodically issues and amends mortgage servicing rules under Regulation X, 12

14   C.F.R. § 1024. Under RESPA and Regulation X, loan servicers, including

15   Defendant, must provide borrowers with specific account information available to

16   them in the regular course of business upon receiving a Qualified Written Request

17   ("QWR") or a Request for Information ("RFI") from the borrower. 12 U.S.C. §

18   2605(e)(1)(A); 12 C.F.R §§ 1024.35(a). Within 30 days of the receipt of a QWR or

19   an RFI from a borrower, the loan servicer must respond in one of two ways: (1)

20   provide the requested information, or (2) conduct a "reasonable search" for the

21   requested information and provide the borrower with a written notification

22   explaining the basis for the servicer's determination that the requested information

23   is "not available." 12 C.F.R. § 1024.35(d)(1)(i) – (ii).

24       In its official commentary to Regulation X, the CFPB outlines what

25   constitutes "not available." Information is "not available" if: "[(1.)] The

26   information is not in the servicer's control or possession, or [(2.)] The information

27   cannot be retrieved in the ordinary course of business through reasonable efforts."

28

12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii). As an example of "available" information, the CFPB provides the following in its official commentary to Regulation X:

> A borrower requests **a copy of a telephonic communication with a servicer**. The servicer's personnel have access in the ordinary course of business to **audio recording files** with organized recordings or transcripts of borrower telephone calls and can identify the communication referred to by the borrower through reasonable business efforts. **The information requested by the borrower is available to the servicer**.

12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii) (bold face added).

RESPA provides for an award of actual damages for violations by a defendant. 12 U.S.C § 2605(f). RESPA also allows a court to award additional damages if defendant engages in a pattern or practice of noncompliance with RESPA, in an amount up to $2,000 per violation. 12 U.S.C § 2605(f). Further, RESPA provides for an award of attorney's fees and costs for successful plaintiffs. 12 U.S.C § 2605(f)(3).

## III.    STATEMENT OF THE CASE

### A.    PLAINTIFFS' FAC ALLEGES THAT CHASE VIOLATED RESPA

Plaintiffs are/were customers of Chase, which was the servicer of Plaintiffs' mortgage loans at all times relevant to the allegations in Plaintiff's FAC. [FAC, ¶¶ 23, 34, 50, 61, & 74]. At some point while Chase was the servicer for Plaintiffs' loans, Plaintiffs retained legal counsel. Counsel for Plaintiffs sent Chase a QWR pursuant to RESPA, 12 U.S.C. § 2605(e), on January 7, 2019 for each of the Plaintiffs individually. [FAC, ¶¶ 23, 37, 50, 62, & 75.] In each letter, Plaintiffs disputed the amount of the debt owed to Chase, and requested documents associated with the account, including, "a copy of any and all recordings of Plaintiff or any other person regarding Plaintiff's account." [FAC, ¶¶ 24, 38, 51, 63, & 76.]

In response to each of Plaintiffs' requests, Chase replied by sending a letter denying Plaintiffs' requests for information. [FAC, ¶¶ 25-26, 39-40, 52-53, 64-65,

& 77-78.] Plaintiffs' Counsel sent a meet and confer letter in response, detailing the reasons why Plaintiffs were entitled to the requested call recordings pursuant to RESPA. [FAC, ¶¶ 27-28, 41-42, 54-55, 66-67, & 79-80.] In response to the meet and confer letters, Chase uniformly responded to Plaintiffs with a letter which again denied Plaintiffs requests for information, with Chase claiming that a subpoena was required to compel Chase to produce the call recordings. [FAC, ¶¶ 29, 43, 56, 68, & 81-82.] Plaintiffs' Counsel again attempted to meet and confer regarding this response, and Chase replied to the second attempt to meet and confer by reaffirming its position regarding the need for a subpoena to compel Chase to send the requested call recordings to Chase. [FAC, ¶¶ 30-31, 46-47, 57-58, 69-70, & 83-84.]

On July 1, 2019, Plaintiff Barbano filed his complaint against Chase. On September 6, 2019, the FAC was filed adding Gamilah Mendoza, Mary Means, Annmarie Ball, and Jose Rivera as additional plaintiffs and class representatives. In the FAC, Plaintiffs alleged that Chase had access to the recordings of the phone calls in the regular course of business, and that Chase did not have a permissible reason to withhold the call recordings requested by Plaintiffs. [FAC, Page 11, ¶¶59-60.] Plaintiffs alleged that Chase engaged in a pattern or practice of noncompliance with RESPA, as Class Counsel had been in contact with at least 67 individuals who had similarly been denied production of audio recordings or call transcripts upon a request for information being sent to Chase pursuant to RESPA. [FAC, Page 11, ¶ 62.]

**B.    CHASE DENIES THE ALLEGATIONS IN THE FAC AND ANY LIABILITY TO PLAINTIFFS OR THE PURPORTED CLASS**

Chase vigorously denies all claims asserted in the Action and denies all allegations of wrongdoing and liability on multiple grounds. For instance, Chase would argue that the QWRs sent by counsel for Plaintiffs do not "dispute the amount of the debt" on any particular basis or with respect to any specific issue, but

instead state "we are disputing the validity of the current debt you claim that [plaintiff owes], *including without limitation*, the principal balance, calculated monthly payment, assessed costs, calculated escrow payment, and any fees claimed to be owed by any trust or entity you may represent or service." On a motion for summary judgment, Chase was expected to argue that Plaintiffs did not, in fact, have any legitimate disputes regarding their loans and, thus, the QWRs were invalid.  Chase would have supported this argument by the fact that counsel for Plaintiffs sent the majority of the QWRs at issue (*i.e.*, for 78 of 84 borrowers). Further, Chase would aver that it must retrieve call recordings through a process that requires manual review of a borrower's account.  Chase therefore would argue that call recordings are not "available" without significant business effort, and no violation of RESPA occurred.

## C. PROCEEDINGS TO DATE

Plaintiff Barbano filed the initial class action complaint on July 1, 2019 asserting violations of RESPA. [See Dkt. No. 1]. On September 6, 2019, Barbano filed the FAC, adding Gamilah Mendoza, Mary Means, Annmarie Ball, and Jose Rivera as additional plaintiffs and class representatives. [Dkt. No. 14]. Thereafter, Chase responded by filing a motion to dismiss. [Dkt. No. 19]. The Court denied Chase's motion to dismiss. [Dkt. No. 25] Chase subsequently filed an answer to Plaintiff's Complaint, denying the majority of the allegations of Plaintiff's Complaint. [Dkt. No. 29]. Plaintiffs served discovery upon Chase and Chase responded. Kazerounian Decl. ¶ 9. The parties spent a considerable amount of time meeting and conferring on the discovery responses by Chase before exploring settlement. *Id*. However, the parties realized the risks on both sides in continuing litigation and agreed to participate in mediation.  The Honorable Diane M. Welsh of JAMS (Ret.) was chosen as mediator by the parties due to her extensive experience as a neutral and Special Master in complex class actions, mass torts, and multi-district litigations (MDLs) regarding consumer protection and other statutes. With

the Court's approval, the parties stayed discovery and suspended the proceeding pending the outcome of the mediation.

The mediation occurred on October 27, 2020 via Zoom videoconference. Prior to the mediation, the parties exchanged factual information and documents, as well as mediation briefs detailing their respective positions on the substantive law applicable to the case, their positions on class certification issues, and their views on whether a pattern or practice of noncompliance with RESPA could be proven on a class-wide basis.

The mediation ended with an agreed settlement in principle. The Settlement Agreement was signed by all parties by March 5, 2021.  A copy of the Settlement Agreement and its exhibits is attached hereto as **Appendix 1.**

### D.    THE SETTLEMENT

#### 1.    The Settlement Class

For purposes of the proposed settlement only, the parties seek certification of the following class:

> The 84 current or former mortgage loan borrowers for whom Chase has located a written request for recordings of telephone conversations in available records.

#### 2.    Proposed Settlement Payments

Under the Settlement, Chase agrees to pay each class member $1,000.00, subject to approval by the Court. [Settlement Agreement, ¶ E.1.].  In addition, each named Plaintiff will be paid an additional $1,000 as an incentive award, so that each named Plaintiff will be paid $2,000 in total by Chase, subject to approval by the Court. *Id*. Class Counsel will be paid an amount of fees and costs not greater than $150,000, subject to the approval by the Court. *Id*.

#### 3.    Class Notice

In class actions based on Rule 23(b)(3), class members must be furnished with "the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, (1974). Rule 23(e)(1) provides that "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal" and Rule 23(c)(2)(B) sets out the minimum contents of the notice. The Settlement Agreement establishes compliance with both rules.

The Parties propose using KCC Class Action Services LLC, a third-party settlement administrator ("Settlement Administrator"), to facilitate the administration of all claims in this matter. The Settlement Administrator will be responsible for providing notice to the class members. The notice plan in this case consists of direct mail notice to the 84 class members mailed within 30 days following entry of the Notice Order. After the Settlement Administrator receives from Chase the data that identifies the names and last known mail addresses of the identifiable class members, the Settlement Administrator will run the mail addresses through the National Change of Address Database, and shall mail the notice to all such class members (the "Mail Notice Program"). *See* Exhibit B to Appendix 1. Skip tracing shall be performed for all returned direct mail, and all costs of skip tracing will be considered Settlement Costs.

The Mail Notice shall direct recipients to Class Counsel for additional information regarding the Settlement. In short, the proposed notice satisfies due process by "provid[ing] class members with the information reasonably necessary for them to make a decision whether to object to the settlement." *In re Heartland*, 851 F. Supp. 2d at 1060 (quoting *In re Katrina Canal Breaches Litig.*, 628 F.3d 186, 197 (5th Cir. 2010)).

### 4. Administration of the Settlement

To obtain a Settlement Award, a class member must not opt out of the class settlement. [Settlement Agreement, § III ¶ E.2., I.-J.2.]. All opt-out requests and objections must be submitted to the Settlement Administrator at the address

designated in the Class Notice by the Opt-Out and Objection Deadline. The deadline for both objecting and opting-out is within 45 days of the Notice Deadline. [Settlement Agreement, §III ¶ B.1]. Class members will be informed of these rights through the Mail Notice. The Mail Notice is Attached as "Exhibit B" to the Settlement Agreement. Exclusion requests must: (a) be signed by the person who requests exclusion; (b) include the full name and address of the person requesting exclusion; and (c) include the following statement: "I/we request to be excluded from the settlement in the Barbano action."  No request for exclusion will be valid unless all of the information described above is included.  No person in the Settlement Class, or any person acting on behalf of or in concert or participation with a person in the Settlement Class, may exclude any other person from the Settlement Class. Therefore, all class members will be sent a check for $1,000 unless they opt out of the Settlement.

### 5.    Scope of Release

Plaintiffs seek Court approval of the settlement and a final judgment and order dismissing with prejudice the claims of Plaintiffs and the class members as set forth in this Settlement Agreement. The scope of the release by all class members (other than those who exclude themselves from the Settlement) is narrowly tailored to only cover those actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands, of whatever character, arising out of, relating to, or in connection with the alleged denial of requests for information sent by class members to Chase under RESPA, including in reference to call recordings or transcripts of phone calls relating to class members' mortgage loans, within the Class Period.  [*See* Settlement Agreement, § III ¶ F].

The scope of release also covers any and all actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands arising out of the administration of this settlement. *Id*. The release covers known and unknown claims, including a waiver of California Civil Code § 1542.  *Id*.

### 6.    Termination of Settlement

This Settlement may be terminated by either Class Counsel or Chase by serving on counsel for the opposing Party and filing with the Court a written notice of termination within 30 days (or such longer time as may be agreed between Class Counsel and Chase) if the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement.

Chase also shall have the right to terminate the Settlement by serving on Class Counsel and filing with the Court a notice of termination within fifteen days of its receipt from the Settlement Administrator of the final report specified in paragraph § III, ¶ I.3. of the Settlement Agreement, if the number of class members who timely request exclusion from the Settlement Class equals or exceeds 15 people. [Settlement Agreement, § III.I.3.].

### 7.    Class Representative's Application for Service Award

Plaintiffs will apply to the Court for a service award of up to $1,000.00 for each named plaintiff as a service award for their involvement as class representatives in this action. The service awards will be in addition to the $1,000 each named plaintiff will receive as a class member. Any service award approved by the Court will be paid by the Settlement Administrator out of the settlement fund established by Chase before payments to other class members are made. [*See* Settlement Agreement,§ III ¶ H].

### 8.    Class Counsel's Application for Attorneys' Fees and Costs

Class Counsel shall move the Court for an award of attorney's fees ("Motion for Fees") and costs not to exceed $150,000. [Settlement Agreement, § III ¶ E.1.]. Any award of fees and costs approved by the Court shall be paid by Chase within ten days after the Effective Date. Court approval of Class Counsel's attorney's fees and costs is not a condition of the settlement. *Id*.

### 9.    Second Distribution and Remaining Funds

All checks for Settlement Awards will be valid for 120 days from the date on the check.   Any remaining monies from uncashed settlement awards will be donated *cy pres* to the California Reinvestment Coalition ("CRC"). The CRC strives to provide an inclusive and fair economy that meets the needs of communities of color and low-income communities by ensuring banks and other corporations invest and conduct business in communities in a just and equitable manner. Kazerounian Decl. ¶ 74.  Over the past three decades, the CRC has worked to monitor bank practices and advocate for systematic changes in the financial services, state, and federal policy arenas. *Id.* at ¶ 75. Therefore, CRC is appropriate as a *cy pres* in a case where consumers alleged unfair treatment by Chase, a financial institution. *Id.* at ¶ 76. CRC as a cy pres recipient here is consistent with *Dennis v. Kellogg Company*, No. 11-55674 & No. 11-55706, 2012 U.S. App. LEXIS 18576 (9th Cir. Sept. 4, 2012).

### 10.    Legal Analysis

Rule 23(e) requires court approval for settlement of class claims.  Approval of a class settlement occurs in two steps:

First, the Court conditionally certifies the class and grants preliminary approval of the settlement.

Second, after the settlement is preliminarily approved and notice of the settlement is provided to the class, the Court conducts a fairness hearing to determine if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation (4th ed. 2004) § 21.632; *In re NASDAQ Market Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

The instant Motion is submitted in support of the first step of the settlement approval process.

### 11.    The Proposed Class Satisfies The Requirements Of Rule 23

Before granting preliminary approval of a settlement, the Court must determine that the proposed class can be certified for settlement purposes. See *Manual for Complex Litigation* (4th Ed. 2004) § 21.632; *Amchem Prods. Inc. v. Windor*, 521 U.S. 591, 620 (1997). Rule 23 governs the issue of class certification, whether the proposed class is a litigated class or, as here, a settlement class. All criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes.

Certification is appropriate where the proposed class and the proposed class representatives meet four prerequisites of Rule 23(a) – (i) numerosity; (ii) commonality; (iii) typicality; and, (iv) adequacy of representation. In addition, one of the three requirements of Rule 23(b) must also be met. Certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Parties agree that the requirements for class certification under Rule 23 have been met for the sole purpose of effectuating settlement of this disputed class claim. Nothing in regard to the settlement of this disputed claim shall be construed as an admission that Plaintiffs have satisfied the substantive requirements of Rule 23. In evaluating a settlement in this type of complex litigation, courts have long recognized that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (footnote omitted). Thus, compromise is particularly appropriate. *Nelson v. Bennett*, 662 F. Supp. 1325, 1334 (E.D. Cal. 1987). Furthermore, the treatment of this matter as a class action for purposes of settlement shall not be admissible to support class certification in any other matter. In the event that the settlement is not approved, the Parties agree that any agreement and order certifying a settlement class shall be null and void and the

parties shall return to their respective positions at the time this Motion was submitted to the Court for approval.

### i. *The members of the Settlement Class are sufficiently numerous*

The first requirement for maintaining a class action under Rule 23(a) is that the class is so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1).  Generally, the numerosity requirement is satisfied when the class is comprised of 40 or more members. *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007); see also *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) ("Generally speaking, courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members"); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed at level of 40 members).

In this case, the Settlement Class consists of 84 persons.  *See* Declaration of Lindsay N. Aherne in Support of Plaintiffs' Motion for Certification of Class and Preliminary Approval of Class Settlement ("Aherne Decl."), ¶ 5.  In order to determine the class size, Chase's counsel requested copies of documents within the relevant system at Chase identified as "qualified written requests" or "QWRs and dated between July 1, 2018 and February 10, 2020. Aherne Decl. ¶ 3. In response, Chase provided 1,898 documents. *Id*.  Chase's counsel performed key-word searches for "audio" and "recording(s)," which resulted in 274 "hits." Aherne Decl. ¶ 4.  Chase's counsel then manually reviewed each of the 274 documents. *Id.* After de-duping (*i.e.*, more than one letter from the same borrower(s)), there were 84 total borrowers (or groups of co-borrowers on the same loan) that requested audio recordings from Chase. Aherne Decl. ¶ 5. As a result, this putative class action exceeds the numerosity threshold and meets the first prerequisite of Rule 23 for settlement purposes.

### ii. *The requirement of commonality is satisfied.*

The second prerequisite to class certification is the existence of questions of law or fact that are common to the class. Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has made clear that the commonality requirement is to be "construed permissively." *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214 (9th Cir. 2007). Commonality can be established by showing "that the class is united by a common interest." *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (holding that "slight differences in class members' positions" will not defeat commonality). The existence of shared legal issues" will satisfy the commonality requirement even if there are "divergent factual predicates." *Dukes*, 474 F.3d 1214 (9th Cir. 2007). Because the test of commonality is qualitative rather than quantitative, "one significant issue common to the class may be sufficient to warrant certification." *Id.*; *See also General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982) ("Class relief is 'particularly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class."

Here, the Settlement Class is defined as "the 84 current or former mortgage loan borrowers for whom Chase has located a written request for recordings of telephone conversations in available records." The significant common issues presented are whether each of the class members' requests for call recordings or call transcripts in reference to class members' mortgage loan accounts with Chase were denied lawfully or unlawfully by Chase, and whether Chase's denial of production in response to the requests evidences a "pattern or practice of noncompliance" with RESPA. Based upon this conduct, class members all seek the same remedy as permitted by RESPA. Under these circumstances, the commonality requirement is satisfied for purposes of certifying a settlement class. See *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). Therefore, the second prerequisite of Rule 23 is satisfied for settlement purposes.

### iii.    *The requirement of typicality is satisfied.*

The third prerequisite to class certification is that Plaintiffs' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc*., 713 F.3d 225, 232 (7th Cir. 1983). The test for typicality is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  *See also Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1998); *In re United Energy Corp. Solar Power Modules Tax Shelter Ivs. Sec. Litig*., 122 F.R.D. 251, 256 (C.D. Cal. 1988).

In this case, Plaintiffs assert that each maintained a mortgage loan account with Chase, and each requested a copy of any call recordings or transcripts of calls maintained by Chase, a request which was denied by Chase. Plaintiffs make the identical claim on behalf of the class members, and believe that if this case went to trial they could prove the fact that Chase improperly denied access to the requested call recordings or transcripts to 84 persons who had a loan account with Chase. The dispute in this case is whether Chase had a legally permissible reason for denying the requests, and whether Chase engaged in a pattern or practice of noncompliance with RESPA.

Here, Plaintiffs' claims are based on Chase's systematic, uniform denials of requests for similar information under RESPA. Because Plaintiffs' claims arise from the same course of conduct by Chase, typicality under Rule 23(a)(3) is satisfied.  Since each class member also had their requests for information denied by Chase, there is a unity of interest between Plaintiffs and the class members that

Plaintiffs seek to represent.  Stated differently, the violation of RESPA alleged by Plaintiffs is the same violation alleged by the class members.  Therefore, Plaintiffs' claims are typical of the claims of the class.

### iv. *The requirement of adequate representation is satisfied.*

The final requirement of Rule 23(a) is that the representative plaintiff(s) will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and that plaintiffs are represented by qualified and competent counsel." *Dukes*, 474 F.3d 1214 (9th Cir. 2007); *See also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Proposed Class Counsel respectfully suggest that the results achieved in this case are strong evidence of the adequacy of class counsel. Further, Plaintiffs' attorneys are knowledgeable and experienced in class action litigation and in litigation of RESPA claims and are free from conflicts with the class. *Carrizosa v. Stassinos*, 669 F. Supp. 2d 1081 (N.D. Cal. 2008); *Hunt v. Check Recovery Systems, Inc.*, 241 F.R.D. 505 (N.D. Cal. 2007); *Wyatt v. Creditcare, Inc.*, 2005 WL 2780684 (N.D. Cal. 2005); and, *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005).  See Kazerounian Decl., ¶¶ 24-70.; see also McGlothlin Decl., ¶¶ 23-38; see also McBride Decl., ¶¶ 24-36. Class Counsel have vigorously prosecuted this case and understand their fiduciary responsibilities to the class. *Id*.

There is no intra-class conflict between the class representatives and the other class members. Each class representative understands the case and why it was brought on each of their behalf. There are no subclasses and every member of the class will receive the same award. Thus, Plaintiffs and Class Counsel adequately represent the class.

### v. *The Action meets the requirements of Rule 23(b)(3).*

Once the four requirements of Rule 23(a) are met, "the potential class must also satisfy at least one provision of Rule 23(b)." *Rosario v. Livaditis*, 963 F.2d at

1017; *see also General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). Rule 23(b)(3) states that a class may be certified when "questions of law or fact common to class members predominate over any questions affecting only individual members, and [...] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Common issues predominate here because the central question concerning Chase's conduct in this case—whether Chase improperly denied class members' requests for information pursuant to RESPA—can be established through generalized evidence. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1059 ("[T]his case presents several common questions of law and fact arising from a central issue: Heartland's conduct … the resulting injury to each class member from that conduct. Given the settlement posture of this case and the FCRA claim, the common questions predominate over individual issues.")

Because the claims are being certified for purposes of settlement, and the class size of 84 persons is relatively small, there are no issues with manageability. *Amchem*, 521 U.S. at 620 ("Confronted with request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Additionally, resolution of 84 claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. Thus, certification for purposes of settlement is appropriate.

Accordingly, the Parties stipulate, solely for the purposes of this settlement, that the Settlement Class is suitable for certification for settlement purposes. Thus, the Parties request that the Court certify the Settlement Class pursuant to Rule 23(b)(3) for purposes of granting preliminary approval of the settlement. As a matter of public policy, settlement is a strongly favored method for resolving disputes. See *Utility Reform Project v. Bonneville Power Admin.* 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions such as this. *See Officers for*

*Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982). As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

### 12.    The Parties Face Substantial Risks In Pursuing Further Litigation

In litigating this matter, Plaintiffs have identified significant burdens that each class member would bear in the event that Plaintiffs and Chase's settlement is not approved.  These challenges include the difficulties in determining whether Chase's actions in denying production of call recordings or transcripts of phone calls evidenced a pattern or practice of noncompliance with RESPA and what actual damages, if any, were sustained by class members. These significant risks make the global class settlement obtained by Plaintiffs all the more beneficial to the class members while also providing finality for Chase.

Proving that Chase acted in a manner that evidences a pattern or practice of noncompliance with RESPA will be extremely difficult.  Chase would certainly try to defeat class certification by arguing that individualized issues predominate and that pattern and practice is an individualized issue. Specifically, the parties spent a substantial amount of time conferring on the process for obtaining recordings for the class members. This process would be time-consuming for the class members, Chase, and especially for the court system.  Going forward as a class will promote judicial efficiency and result in a fair outcome for all parties. In order to avoid protracted further litigation, the Parties have agreed to settle these disputed claims.

### 13.    The Court Should Preliminarily Approve the Proposed Settlement

Once a settlement class is certified, the Court examines whether to preliminarily approve the settlement. At the preliminary approval stage, the Court need only consider whether the proposed class action settlement is "within the

range of possible approval" and thus may be submitted to members of the prospective class for their acceptance or rejection. Manual for Complex Litigation § 30.45 (3rd ed. 1995). This is different from the ultimate fairness determination for final approval of the settlement. Rather, at this preliminary juncture, the inquiry is limited to whether to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Id*. The Court should grant preliminary approval if the proposed settlement appears to be "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re NASDAQ Market Makers*, 176 F.R.D. at 102. A court should generally grant preliminary approval and direct that notice of the settlement and fairness hearing be disseminated. *See, e.g.*, Newberg & Conte, *Newberg on Class Actions* (Fourth Ed. 2002) § 11.25 pp.38-39, citing *Manual for Complex Litigation*, 3d (1997) § 30.41; *see also In re Traffic Executive Association-Eastern Railroad*, 627 F.2d 631, 634 (2d Cir. 1980) (noting preliminary approval at more requires a determination that there is "probable cause" to submit the settlement proposal to class members and hold a full-scale fairness hearing); *Acosta v. Trans Union LLC*, 234 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out"); *Satchell v. Federal Express Corp*., 2007 WL 1114010, at *4 (N.D. Cal. 2007) (granting preliminary approval because proposed settlement appeared to be the result of arm's length negotiations, non-collusive, free of "obvious defects" and "within the range of possible settlement approval").

A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982). While the

district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In fact, when a settlement is negotiated at arms' length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Cal. 2001). Courts consistently find that "[t]he expense and possible duration of the litigation are major factors to be considered in evaluation the reasonableness of [a]…settlement." *Milstein v. Huck*, 600 F. Supp. 245, 267 (E.D.N.Y. 1984); *Bullock v. Administrator of Estate of Kircher*, 84 F.R.D. 1, 10 (D.N.J. 1979).

### i.    *The settlement is a product of arms' length negotiations.*

This settlement was reached by experienced counsel on both sides following discovery and non-collusive negotiations facilitated by the Honorable Diane M. Welsh. As such, the settlement is entitled to a presumption of fairness. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 380. *See also Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) (approving a settlement after a one-day mediation before a retired federal magistrate judge and noting that "the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties (emphasis added)"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) (approving settlement after a one-day mediation and noting that "the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive (emphasis added)"; *Larson v. Sprint Nextel Corp.*, 2010 WL 239934, at *11 (D.N.J. Jan. 15, 2010) (same); *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); 2 *McLaughlin on Class Actions* § 6:7 (8th ed) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion (emphasis added).").; and, *Dennis v. Kellogg Co.*, 2010 WL 4285011, at

*4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," thus establishing that the proposed settlement was noncollusive (emphasis added).").  Said negotiation was hard fought and resulted in a substantial benefit of one thousand dollars to each of the class members.  Thus, there can be no dispute that the Settlement was reached through non-collusive arm's length negotiations by the Parties. *See Stoddart v. Express Servs.,* 2020 U.S. Dist. LEXIS 186315 (E.D. Cal. 2020).

Furthermore, both parties were represented by experienced class action counsel in this action. See Kazerounian Decl. ¶ 14. As established by the declarations filed concurrently herewith, Class Counsel are experienced consumer class action attorneys. Given that experience and expertise, Class Counsel is well qualified to assess the prospects of the case and to negotiate a favorable resolution for the class. Similarly, Chase's attorneys have extensive class action experience and have litigated numerous consumer class actions across the nation in both state and federal courts.  Thus, the informed conclusion by the Parties should be given deference. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D 359, 380 (N.D. Ohio 2001).

ii. <u>The settlement is fundamentally fair, reasonable and adequate</u>

Moreover, there can be little doubt that the settlement is fair, reasonable and adequate as it necessarily satisfies the "within the range of possible approval" standard for preliminary approval. Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.  In short, there is a presumption that negotiations were conducted in good faith. *Newberg*, § 11.51; *In re Chicken Antitrust Litigation*, 560 F. Supp. 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 667, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents,

particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979); *In re Armored Car Antitrust Litigation*, 472 F. Supp. 1357 (N.D. Ga. 1979); *Sommers v. Abraham, Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. Pa. 1978).

The maximum recovery for each individual litigant if a "pattern or practice of noncompliance" with RESPA is proven is $2,000 per violation. 12 U.S.C § 2605(f). In assessing whether a "pattern or practice of RESPA violations can be proven, courts in other circuits have noted: "'[t]hough there is no magic number of violations that create a "pattern or practice of noncompliance", courts have held that two violations of RESPA are insufficient to support a claim for statutory damages.' *Kapsis v. Am. Home Mortg. Servicing Inc*., 923 F.Supp.2d 430, 445 (E.D.N.Y.2013). On the other hand, allegations of five RESPA violations have been deemed adequate to plead statutory damages." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 (11th Cir. 2016) (*citing Ploog v. HomeSide Lending, Inc*., 209 F.Supp.2d 863, 868–69 (N.D.Ill.2002).

Plaintiffs believe, based on Plaintiffs' receipt of substantially identical letters from Chase denying each request for information, that Chase engaged in a "pattern or practice of noncompliance" with RESPA. Each of the five named Plaintiffs received letters containing similar language: denying the request for recording files or transcripts of phone calls and claiming that a subpoena would be required to compel Chase to send the requested files or documentation. Further, based on Chase's Counsel's investigation, at least 67 class members requested audio recordings or transcripts of calls between themselves and Chase and were similarly denied by Chase in the class period. If Chase failed to provide production of requested call recordings or transcripts of calls in response to a request for information was determined to be a violation of RESPA, Plaintiffs believe it is very

likely a "pattern or practice of noncompliance" would then be easily proven. *See Ploog*, 209 F.Supp.2d at 868-69; *see also Smith v. Specialized Loan Specializing, LLC*, No. 16-cv-2519-GPC-BLM, 2017 WL 1711283 at *8 (S.D. Cal. May 3, 2017) (Allegations of seventeen unlawful responses to requests for information sufficient to state claim of "pattern or practice of noncompliance"); *Mazed v. JP Morgan Chase Bank*, N.A., No. SA-CV-11-814-JLS-ANX, 2014 WL 1364929 at *6 (C.D. Cal. Apr. 7, 2014) (Denying summary judgment on issue of defendant committing "pattern or practice of noncompliance" where Defendant failed to respond to seven letters containing requests for information.)

Further, other RESPA class action settlements have been approved with a damages award less than $1,000 per class member. *See Reed v. Wash. Mut. Inc.* Civil Action No. 07-4426, 2012 U.S. Dist. Lexis 171606 (E.D. Penn. Dec. 12, 2012) (Approving class settlement paying $98 per class member in RESPA case alleging unlawful kickback scheme); *See also Vaught v. Bank of America, N.A.* 901 F.Supp. 2d 1071 (C.D.Ill. 2012) (allegations of Bank of America losing payments of class members, settlement approved whereby alleged lost payments were credited and each class member received $50.)

Although Plaintiffs believe that Chase's conduct violates RESPA, Plaintiffs are aware that the jury, the Court on a dispositive motion, or the Ninth Circuit, may determine that: (1) Chase's actions in withholding the class members' call recordings or transcripts was legally permissible; (2) there may not be any calculable actual damages; and (3) individual inquiries predominate regarding whether Chase's actions evidence a "pattern or practice of noncompliance" with RESPA.

Despite said risks, uncertainties and delays, the proposed settlement provides each Settlement Class Member with the opportunity to receive what Class Counsel believes to be an outstanding award. Each Settlement Class Member merely needs to not opt out in order to receive $1,000. Considering the difficulties discussed

above, Plaintiffs assert that the current settlement is fundamentally fair, reasonable and adequate.

**14.    The Proposed Plan of Notice Satisfies the Requirements of Rule 23 and Due Process.**

"The Court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. Proc. 23(e).   Rule 23(e) requires that notice of a proposed settlement inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 8.32 at 262-68 (4th ed. 2002).   The notice must also indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out, and that any member who does not opt out may appear through counsel. Fed. R. Civ. P. 23(c)(2).

Subsection (c)(2)(B) of Rule 23 further provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the Parties will provide direct mail notice to the 84 borrowers identified in Chase's records as having been denied requests for information relating to call recordings or call transcripts relating to a mortgage loan account with Chase. Additional details about the proposed settlement will be provided by Class Counsel, upon inquiry from Settlement Class Member.   [See Settlement Agreement, § III ¶¶ C-D.1]. Accordingly, the Parties' proposed notice complies

with due process requirements. *Mendoza v. United States*, 623 F.3d 1338, 1351 (9th Cir. 1980).

In addition, the form of notice, which is attached as Exhibit B to the Settlement Agreement (Appendix 1),  meet all of the requirements of Rule 23(e): it identifies the parties to the action and describes the nature of the action and the Settlement Class in a straightforward manner; it succinctly describes the essential terms of the settlement and the release; it provides class members with information on how to opt-out of the Settlement Class and provides all applicable deadlines for such action; and it informs class members that, if they do not exclude themselves from the Settlement Class, and the Settlement is approved, they will be bound by the resulting judgment. Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). In addition, the notice instructs class members to contact Class Counsel to obtain more detailed information regarding the Settlement.  In short, the Class Notice will provide the necessary information for class members to make an informed decision regarding the proposed settlement. The content and method of the notice should be designed to apprise the class members of the terms of the proposed settlement and of the class members' rights regarding settlement.  *See Mullane*, 339 U.S. at 314; *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 378 (E.D. Pa. 1970).

### 15.   Proposed Preliminary Schedule

The Parties propose that the Court establish the following deadlines related to the proposed settlement:

1. Notice Deadline:  To be completed within 30 days from the entry of the Order Granting Joint Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order");

2.  Deadline for filing of Plaintiffs' Motion for Attorneys' Fees and Costs and Service Awards: 30 days before the Opt-Out and Objection Deadline;

3.  Opt-Out and Objection Deadline: Must be postmarked no later than 45 days after the Notice Deadline. Objections must also be filed with the Court no later than 45 days after the Notice Deadline;

4.  Final Approval Hearing:  60 days after the Opt-Out and Objection Deadline, as the Court's schedule permits;

5.  Submission of Papers in Support of Final Approval and Incentive Award: within 30 days following the opt-out and objection deadlines.

6.  Opposition to any Objections: 30 days following the opt-out and objection deadlines.

## IV.  CONCLUSION

Based on the foregoing, all the requirements of Rule 23 have been met. Recognizing that the parties face substantial risks in pursuing further litigation and the proposed settlement amount is comparable to similar cases, it is clear that the settlement is fundamentally fair, reasonable, and adequate. Additionally, Plaintiffs are represented by counsel who are qualified in class action litigation and have had extensive experience in consumer protection class action lawsuits. Therefore, Parties respectfully request that the Court grant preliminary approval of the proposed settlement and enter the Proposed Order filed concurrently with this Motion.

KAZEROUNI LAW GROUP, APC

Date: March 19, 2021                By:  *s/ Ryan L. McBride*

Ryan L. McBride Esq.
*Attorneys for Plaintiffs and the Putative Class*